J-S69004-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN THE INTEREST OF:  D.G.K., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF:  R.M.F., MOTHER | No. 1045 MDA 2018 |

Appeal from the Decree Entered May 31, 2018
In the Court of Common Pleas of Lancaster County
Orphans' Court at No(s): 2018-00469

BEFORE:  BENDER, P.J.E., LAZARUS, J., and MURRAY, J.

MEMORANDUM BY BENDER, P.J.E.:                **FILED DECEMBER 24, 2018**

R.M.F. (Mother) appeals from the decree entered May 31, 2018, that granted the petition filed by the Lancaster County Children and Youth Social Services Agency (Agency) to involuntarily terminate Mother's parental rights to her son, D.G.K. (Child), born in February of 2017.[1]  Additionally, Mother's counsel has filed a petition to withdraw and a brief pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009).  After review, we grant counsel's petition to withdraw and affirm the termination decree.

The trial court provided a short summary of the facts of this case, stating:

> In 2014, the Agency became involved with Mother and her two oldest children because of Mother's drug abuse.  That involvement ended when Mother's parental rights to those two children were involuntarily terminated in April of 2016.  The Agency became re-involved with Mother involving this child, D.G.K., in February of

---

[1] In the same decree, the court involuntarily terminated the parental rights of Child's father, D.M.K. (Father).  We are not aware of any appeal filed by Father.

2017[,] after receiving a report that Mother had tested positive for opiates on January 17, 201[7].  Mother was incarcerated from that date until February 2, 201[7], at which time she was furloughed to give birth.  The Agency attempted to implement a Safety Plan but Mother refused, forcing [C]hild to be placed in Agency custody.

Trial Court Opinion (TCO), 7/30/18, at 1-2 (unnumbered) (citations to record omitted).

The Agency initially received physical custody of Child on February 6, 2017, after it had filed a petition in the trial court.  Child was found to be dependent following an adjudication and disposition hearing held on March 2, 2017.  At that hearing, Mother was determined to have aggravated circumstances because of the prior involuntary termination of her parental rights to the two older children.  Despite this determination, the court approved a child permanency plan and set forth objectives for Mother.  Subsequently, on February 27, 2018, the Agency petitioned to terminate Mother's parental rights to Child pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5) and (b), and after a hearing held on May 29, 2018, the court issued the decree that is presently on appeal.

Before reaching the merits of Mother's appeal, we must first address counsel's request to withdraw.  *See Commonwealth v. Rojas*, 874 A.2d 638, 639 (Pa. Super. 2005) ("'When faced with a purported *Anders* brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw.'") (quoting *Commonwealth v. Smith*, 700 A.2d 1301, 1303 (Pa. Super. 1997)).  "In *In re V.E.*, … 611 A.2d 1267 (Pa. Super.

1992), this Court extended the **Anders** principles to appeals involving the termination of parental rights." **In re X.J.**, 105 A.3d 1, 3 (Pa. Super. 2014). To withdraw pursuant to **Anders**, counsel must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [**Anders**] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

**Commonwealth v. Cartrette**, 83 A.3d 1030, 1032 (Pa. Super. 2013) (*en banc*) (citing **Commonwealth v. Lilley**, 978 A.2d 995, 997 (Pa. Super. 2009)). With respect to the third requirement of **Anders**, that counsel inform the appellant of his or her rights in light of counsel's withdrawal, this Court has held that counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights." **Commonwealth v. Millisock**, 873 A.2d 748, 752 (Pa. Super. 2005).

Additionally, an **Anders** brief must comply with the following requirements:

> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

***Santiago***, 978 A.2d at 361.

In the instant matter, counsel has filed a petition to withdraw, certifying that she has reviewed the case and determined that Mother's appeal is wholly frivolous. Counsel also has filed a brief that includes a summary of the history and facts of the case, issues raised by Mother, and counsel's assessment of why those issues are meritless, with citations to relevant legal authority. Counsel has attached to her brief a copy of her letter to Mother, advising Mother that she may obtain new counsel or raise additional issues *pro se.* Accordingly, counsel has substantially complied with the requirements of ***Anders*** and ***Santiago***. ***See Commonwealth v. Reid***, 117 A.3d 777, 781 (Pa. Super. 2015) (observing that substantial compliance with the ***Anders*** requirements is sufficient). We, therefore, may proceed to review the issues outlined in the ***Anders*** brief. In addition, we must "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." ***Commonwealth v. Flowers***, 113 A.3d 1246, 1250 (Pa. Super. 2015) (footnote omitted).

Counsel's ***Anders*** brief raises the following issues for our review:

A. Whether the [c]ourt erred when [it] terminated [M]other's parental rights when the evidence presented showed that [M]other had undertaken work on all of her reunification objectives[?]

B. Whether termination of [M]other's parental rights was in the best interests of [C]hild[?]

***Anders*** brief at 7.

We consider these issues mindful of our well-settled standard of review.

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, which requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In this case, the trial court terminated Mother's parental rights pursuant to Sections 2511(a) (1), (2), and (5) and (b). We need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super.

2004) (*en banc*). Here, we analyze the court's decision to terminate under

Sections 2511(a)(2) and (b), which provide as follows:

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\*\*\*

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\*\*\*

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2), (b).

We first address whether the trial court abused its discretion by terminating Mother's parental rights pursuant to Section 2511(a)(2).

In order to terminate parental rights pursuant to 23 Pa.C.S.[] § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the

causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted)). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002) (citations omitted).

Here, the trial court found that,

[d]espite [Child's] being in Agency custody for fifteen months, Mother has failed to complete her plan's objectives. As part of Mother's mental health objective, she received an evaluation with a recommendation to follow through with her drug and alcohol treatment. Mother also had an objective to remain free from drug use. When the [A]gency first came into contact with Mother in 2014, she was struggling with a heroin addiction. The Agency was contacted again when Mother was pregnant with this [C]hild, D.G.K. Mother tested positive for opiates a month prior to [C]hild's birth. On May 8, 2017, Mother received a substance abuse evaluation which recommended she receive intensive outpatient drug and alcohol treatment individually once a week and group sessions twice a week. Mother began substance abuse case management services with Family Alternatives. On August 2, 2017, Family Alternatives conducted a random drug screen, and Mother tested positive for morphine. Mother was again screened on October 1, 2017, and tested positive for opiates. She claimed to have a prescription but was unable to provide any documentation. Mother was unsuccessfully discharged from the Family Alternatives program on November 3, 2017. On November 8, 2017, Addiction Recovery Services, where Mother was methadone dosing, reported that she had relapsed. At the time of the hearing, Mother was not actively involved in any drug rehabilitation program.

Mother failed to complete her objective of remaining crime free. Mother was charged with a felony theft in September, 2017. In

November[,] 2017, Mother's probation officer reported to the Agency that Mother was not complaint [*sic*] with her probation and had been out of contact since September[,] 2017. Mother was incarcerated on January 3, 2018 and released to a rehabilitation facility on April 18, 2018.

In July of 2017, an objective of remaining free of domestic violence was added to Mother's plan after a report of a domestic violence incident. Both parents acknowledged to the police that there was a physical altercation between them with [C]hild present. Mother participated in a domestic violence evaluation on August 31, 2017. She was scheduled for an intake session on September 28, 2017, but did not appear and was subsequently discharged for noncompliance and for failing to attend sessions. As a result of the domestic violence incident, the Agency required the parents to participate in couple's therapy. Mother and [F]ather began denying they were in a relationship. Despite their denial, they were together when they were both arrested on September 27, 2017. Furthermore, their refusal was undeniably refuted by their phone conversations, recorded while Mother was incarcerated in 2018, in which they discussed how they deceived the [A]gency and the court.

Mother has not completed the objective of financial stability. Mother provided no proof of income to the Agency and made no progress on this goal.

Mother failed to learn and use good parenting skills. Mother never began the parent educator program and made no progress on this goal.

Mother had an objective to maintain a commitment to her [C]hild. Mother's last visit with [C]hild was in September of 2017, and her visits were suspended in November[,] 2017.

TCO at 4-6 (unnumbered) (citations to record omitted).

After a thorough review of the record in this matter, we conclude that the trial court did not abuse its discretion by terminating Mother's parental rights pursuant to Section 2511(a). The court's findings, stated above, are based upon the testimony provided at the termination hearing and support

the court's finding that Mother is incapable of providing Child with the essential parental care, control and subsistence necessary for his mental and physical well-being, and that Mother is unable to remedy the causes of her parental incapacity. At the time the court entered its termination decree, Child had been in foster care for more than fifteen months and Mother had failed to successfully accomplish any of her goals. It is clear that Mother simply will not, and apparently cannot, become a capable parent for Child at any point in the foreseeable future. Thus, Mother is not entitled to relief as to Section 2511(a)(2).

We next consider whether the trial court abused its discretion by terminating Mother's parental rights pursuant to Section 2511(b). We have discussed our analysis under Section 2511(b) as follows:

> Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case.

*In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010) (citations omitted).

Relating to Section 2511(b), the trial court found that terminating Mother's parental rights would best serve Child's needs and welfare, stating:

> The best interests of [Child] [are] served by remaining in foster care and being adopted. He has been in care most of his life. The [c]ourt is convinced Mother will not resolve her significant issues in a reasonable amount of time. [Child] remains in a loving and healthy home which is a potentially permanent resource. [Child] cannot wait for an indefinite period of time for the stability and care of a permanent family in the hope that his Mother will drastically change her behavior and accomplish her goals. The [g]uardian *ad litem* concurs with the termination of paternal [*sic*] rights.

TCO at 6 (unnumbered) (citations to record omitted).

Again, our review of the record reveals that it supports the trial court's conclusion that terminating Mother's parental rights would best serve Child's needs and welfare. Child has spent nearly his entire life with his foster parents and thus it is clear that Child should not be removed from their care. Child will not suffer irreparable harm if Mother's parental rights are terminated.

Accordingly, our independent review of Mother's claims demonstrates that they do not entitle her to relief. Moreover, our review of the record does not reveal any non-frivolous issues overlooked by counsel. *See Flowers*, 113 A.3d at 1250. Therefore, we grant counsel's petition to withdraw, and affirm the trial court's decree.

Decree affirmed. Petition to withdraw granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/24/2018